UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LORINDO R. POWELL, <br><br> Plaintiff, <br><br> – against – <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | **MEMORANDUM AND ORDER** <br><br> No. 18-cv-5378 (ERK)(MMH) |

KORMAN, *J.*:

## BACKGROUND

I presume familiarity with the factual and procedural history of this case, which was set forth in the Memorandum and Order dismissing Plaintiff Lorindo Powell's claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and granting Powell's motion for leave to file a Fourth Amended Complaint ("FAC") to include the United States as a party so as to plead claims against it under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2401(b), 2671–80. *See Powell v. Quay*, No. 18-cv-5378, 2023 WL 1994873 (E.D.N.Y. Feb. 14, 2023).

The FAC raises the following causes of action, alleging the United States: (1) negligently assigned Powell to the male general population unit at the Metropolitan Detention Center, Brooklyn ("MDC") despite knowing she identified as a transgender woman, FAC ¶¶ 40–43, ECF No. 62; (2) negligently failed to

1

inspect her cell, prompting inmates to enter her cell and sexually assault her, FAC ¶¶ 44, 46–47, 50; (3) deprived her rights under the Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution and under the New York Constitution, FAC ¶¶ 53, 56; and (4) violated 42 U.S.C. § 1983, FAC ¶¶ 60–61. Defendant United States now moves to dismiss the FAC. *See* Mem. of Law in Supp. of Def.'s Mot. to Dismiss the Fourth Am. Compl. ("Def.'s Mot."), ECF No. 72-1.

## **STANDARD OF REVIEW**

### A. Rule 12(b)(1) Standard

To survive a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a "plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). "The plaintiff likewise bears the burden of showing that she exhausted her administrative remedies by presenting her claim to the appropriate federal agency before filing suit." *Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019). When deciding a motion to dismiss, "a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Lunney*, 319 F.3d at 554.

### B. Rule 12(b)(6) Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

2

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In assessing the complaint, we must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff's favor. However, we disregard conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause of action.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (alteration in original) (footnote omitted) (quoting *Twombly*, 550 U.S. at 555).

Where a defendant raises an affirmative defense in a motion to dismiss that "an action is barred by a statute of limitations, . . . [s]uch a motion is properly treated as a Rule 12(b)(6) motion to dismiss . . . rather than a Rule 12(b)(1) motion to dismiss." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

## DISCUSSION

### I. Powell's Claim for The Negligent Inspection of Her Cell Is Not Time-Barred, But Her Negligent Housing Claim Is Time-Barred and Must Be Dismissed Under Rule 12(b)(6).

**A. The FTCA's Limited Waiver of Sovereign Immunity**

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). Congress's enactment of the FTCA "constitute[d] a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances." *Liranzo v. United*

3

*States*, 690 F.3d 78, 85 (2d Cir. 2012) (citation and internal quotation marks omitted). Specifically, the FTCA waives the sovereign immunity of the United States and provides jurisdiction in the federal district courts for

> claims against the United States, for money damages . . . for . . . injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

### B. Exhaustion of Administrative Remedies Under the FTCA

The U.S. Attorney argues that Powell's claim for the negligent inspection of her cell before December 4, 2017, and her claim for negligent housing assignment are time-barred because the Bureau of Prisons ("BOP") had not received her Standard Form 95 ("SF-95") until December 4, 2019. Def.'s Mot. at 10–11, 13. The FTCA "provides that a tort claim against the United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues' and then brought to federal court 'within six months' after the agency acts on the claim." *United States v. Wong*, 575 U.S. 402, 405 (2015) (quoting 28 U.S.C. § 2401(b)). A plaintiff's FTCA claim accrues at the time of injury, *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998), or "when the plaintiff in the exercise of reasonable diligence knows both the existence and the cause of his injury," *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1080 (2d Cir. 1988).

In *Cooke,* the Second Circuit held that "[a] plaintiff satisfies the [presentment] requirement when 'a Federal agency *receives* from a claimant . . . an executed Standard Form 95 or other written notification of an incident.'" 918 F.3d at 81 (quoting 28 C.F.R. § 14.2)). Concluding that the common-law mailbox rule[1] does not fulfill the FTCA's presentment requirement, the Second Circuit explained that a plaintiff "must show *actual receipt*" of the claim by the appropriate Federal agency. *Id.* at 81–82 (emphasis added). The court reasoned that "applying the mailbox rule to claims under the FTCA would be inconsistent with the principle that waivers of sovereign immunity must be strictly construed and limited in scope in favor of the sovereign." *Id.* at 82.

Here, Powell has the burden of showing that subject matter jurisdiction exists by demonstrating that an executed SF-95 was received by the BOP within two years of the date her claim accrued. Powell's certified mail receipt shows that she mailed the SF-95 to the BOP on November 25, 2019, and that a BOP official signed for it on December 2, 2019. *See* Decl. of Perry D. Silver ¶ 3 & Ex. 2 (containing certified mail receipt signed by "C. Tapp" and dated "12-2-19"), ECF Nos. 73-1, 73-3. Thus, while the BOP stamped "RECEIVED" on the SF-95 on December 4, 2019, *see* Decl.

---

[1] The common-law mailbox rule creates a presumption of receipt where there is "proof that a letter properly directed was placed in a post office." *Hagnar v. United States*, 285 U.S. 427, 430 (1932).

5

of Michael Cardew Ex. 1, ECF No. 72-3, the BOP *actually received* the SF-95 on December 2, which is the date of presentment.

The U.S. Attorney asserts that, while the FAC alleges the rapes occurred until January 2018, Powell's "original complaint contained a handwritten statement claiming that the assaults ended by December 2017." Def.'s Mot. at 11 (citing Compl. at 18, ECF No. 1). But the U.S. Attorney neglects to mention that Powell's original complaint contained a handwritten Civil Rights Complaint stating that the assaults occurred from "May 2017 to *Jan[.] 2018*." Compl. at 3 (emphasis added). Powell's four subsequent amended complaints also indicate that the assaults occurred between May 2017 and January 2018. *See* First Am. Compl. ¶ 10, ECF No. 26; Second Am. Compl. ¶¶ 17–20, ECF No. 35; Third Am. Compl. ¶ 34, ECF No. 41; and FAC ¶ 29.

Liberally construing Powell's FAC and drawing all reasonable inferences in her favor, Powell's claim that MDC guards negligently failed to inspect her cell is not time-barred because the assaults that occurred from December 2, 2017, through January 2018 fall within the FTCA's statute of limitations. However, Powell's claim that she was negligently housed in a male general population unit is time-barred and thus dismissed because that claim accrued on May 18, 2017—the date she was assigned, and was aware she was confined, to the male housing unit. *See* FAC ¶ 19.

## C. The Continuing Violation Doctrine

A presentment date of December 2, 2019, would indicate that Powell's FTCA claims arising from negligent conduct occurring before December 2, 2017, are time-barred if the claims accrued before that date. Assuming the continuing violation doctrine applies to FTCA claims,[2] I agree with the U.S. Attorney that the doctrine would not apply to any negligence in placing Powell in a male housing unit or to assaults arising from the negligent inspection of her cell. Thus, Powell's only actionable claims would be from assaults arising out of the negligent inspection of her cell during the period from December 2, 2017, to January 2018.

The continuing violation doctrine "provides that, in certain tort cases involving continuous or repeated injuries, the statute of limitations accrues upon the date of the last injury and that the plaintiff may recover for the entire period of the . . . negligence, provided that an act contributing to the claim occurs within the filing period." *Mix v. Del. & Hudson Ry. Co.*, 345 F.3d 82, 88 (2d Cir. 2003). The doctrine applies to claims "composed of a series of separate acts that collectively constitute one unlawful . . . practice." *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)) (internal quotation marks omitted). The doctrine thus "applies not to discrete

---

[2] The Second Circuit has not yet decided "whether the continuing violation doctrine may apply to toll the FTCA statute of limitations." *Powell v. Quay*, 2023 WL 1994873, at *5 (citing *Syms v. Olin Corp.*, 408 F.3d 95, 108 (2d Cir. 2005)).

7

unlawful acts, even where those discrete acts are part of a 'serial violation,' but to claims that by their nature accrue only after the plaintiff has been subject to some threshold amount of mistreatment." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (alteration omitted) (quoting *Morgan*, 536 U.S. at 114–15). A discrete act "'occur[s]' on the day that it 'happen[s]'" and "starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 110, 113.

"The rationale behind the 'discrete act' rule is that when a plaintiff is harmed by a discrete act, he should be aware of it . . . ." *Stephens v. Hofstra Univ. Sch. of L.*, No. 01-CV-5388, 2005 WL 1505601, at *4 (E.D.N.Y. June 24, 2005). "To permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed . . . would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims." *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980).

Courts have applied the continuing violation doctrine to cases involving "a series of acts that together comprise" "a single claim." *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009). For example, courts have applied the doctrine to hostile work environment, medical malpractice, and deliberate indifference claims. *See, e.g.*, *Morgan*, 536 U.S. at 115, 117 (holding the continuing violation doctrine applied to hostile work environment claims, which "are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct . . . [and] therefore cannot be said to occur on any particular day"); *Ulrich*, 853 F.2d at 1080–

81 (tolling statute of limitations for FTCA medical malpractice claims because "it is not reasonable to expect a patient . . . in the continuing care of a doctor to discover that the doctor's acts may be the cause of his injuries," and "to interrupt corrective treatment by instituting suit"); *Shomo*, 579 F.3d at 181–85 (holding that the continuing violation doctrine may apply to deliberate indifference claim against prison officials because ongoing denial of medical care is a single violation of inmate's rights that does not terminate until inmate is treated or released).

In contrast, courts have declined to apply the doctrine where each of the defendant's tortious acts are actionable, and plaintiffs are aware of their injury and its cause. *See, e.g.*, *Torres-Estrada v. Cases*, 88 F.4th 14, 24 (1st Cir. 2023) (holding that the continuing violation doctrine was inapplicable to the plaintiff's FTCA claim based on assault and battery because such a claim "is actionable after a single instance and does not require a pattern of continued conduct before a claim can be made"); *Mix*, 345 F.3d at 87–88 (declining to apply the continuing tort doctrine to toll statute of limitations in Federal Employers' Liability Act claim where plaintiff "knew, or should have known, of both the existence and cause of his injury" before the limitations period).

Here, the U.S. Attorney disagrees with Powell that the continuing violation doctrine applies because the sexual assaults at issue "are discrete and serial in nature." Mem. of Law in Further Supp. of Def.'s Mot. to Dismiss the Fourth Am. Compl. at 2–3, ECF No. 74. I agree. First, any negligence in assigning Powell to a

9

male general population unit occurred on a discrete day—May 18, 2017, the day Powell was so assigned and thus made aware she was housed in a male unit. *See* FAC ¶ 19. Second, each sexual assault Powell suffered because of the alleged negligence of MDC in failing to respond to the presence of other inmates in her cell would have been actionable. *See* FAC ¶ 31; *cf. Seaton v. Seaton*, 971 F. Supp. 1188, 1195 (E.D. Tenn. 1997) (holding that repeated assaults by a spouse are not a continuing tort because the assaults "are of a clearly separate or discrete nature"). Powell would not have had to be "subject to some threshold amount of mistreatment" in the form of sexual assault to file suit under the FTCA. *Gonzalez*, 802 F.3d at 220.

## II. Powell's Claim for Negligent Housing Assignment Must Be Dismissed for Lack of Subject Matter Jurisdiction.

In addition to being untimely, the U.S. Attorney argues that Powell's claim that the BOP was negligent in housing her in a male general population unit is barred by the discretionary function exception to the FTCA. *See* Def.'s Mot. at 15–20. The discretionary function exception "exempts the United States from liability for claims 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty.'" *United States v. Varig Airlines*, 467 U.S. 797, 802 (1984) (quoting 28 U.S.C. § 2680(a)). In *United States v. Gaubert*, 499 U.S. 315 (1991), the Supreme Court established a two-prong test to determine whether

government conduct involves "a discretionary function or duty" under § 2680(a). *Id.* at 322–23.

### A. The Discretionary Act Prong

First, a court must determine whether a challenged government action was "discretionary in nature," which the Supreme Court construed as involving "an element of judgment or choice." *Id.* at 322. A government action is *not* discretionary when a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)) (internal quotation marks omitted).

The "BOP's decisions regarding prisoner housing are discretionary," *Calix v. Pope*, No. 18-CV-3980, 2022 WL 4539511, at *6 (E.D.N.Y. Sept. 28, 2022), because, while, by statute, the BOP must "provide suitable quarters" for, "provide for the safekeeping of", and "provide for the protection" of all federal inmates, 18 U.S.C. § 4042(a)(2)-(3), this statute "does not direct the manner by which the BOP must fulfill this duty," *Chen v. United States*, No. 09-CV-2306, 2011 WL 2039433, at *7 (E.D.N.Y. May 24, 2011) (alteration, citation, and internal quotation marks omitted).

Specifically, BOP officials have the discretion to decide whether to place an inmate in a particular housing unit; moreover, inmates' injuries arising from such decisions do not defeat application of the discretionary function exception. *See, e.g.*, *Barone v. United States*, No. 12cv4103, 2015 WL 10791889, at *17–19 (S.D.N.Y.

11

Oct. 29, 2015) (dismissing plaintiff's FTCA claim based on alleged negligence arising from his placement in prison special housing unit as barred by discretionary function exception despite harm to plaintiff), *report and recommendation adopted in part*, 2016 WL 2658174 (S.D.N.Y. May 5, 2016), *aff'd*, 722 Fed. Appx. 57 (2d Cir. 2018); *Brown v. United States*, 569 F. Supp. 2d 596, 600 (W.D. Va. 2008) (holding that prison official's decision to place an inmate in general population falls within the discretionary function exception); *Saunders v. United States*, 502 F. Supp. 2d 493, 496 (E.D. Va. 2007) (holding that the discretionary function exception applied to an inmate's claim that the Marshals Service was negligent in placing him in an unsafe facility where he was injured in a fight with inmates); *Green v. United States*, No. 94-5706, 1995 WL 574495, at *7 (E.D. Pa. Sept. 22, 1995) (prisoner's FTCA claim based on sexual assault by cellmate with a history of sexual violence dismissed for lack of subject matter jurisdiction).

Here, the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301–09, and its associated regulations ("PREA Regulations"), *see* 28 C.F.R. § 115, indicate that BOP personnel's decisions regarding transgender inmates housing assignments are discretionary. PREA Regulations require the BOP to assess all inmates during intake to determine their risk of becoming a victim of sexual abuse or propensity to commit sexual abuse. *See* 28 C.F.R. § 115.41. This process, known as "risk screening," helps determine an inmate's housing assignment. *See id.* § 115.42. PREA Regulations require the BOP to "use information from the risk screening"

process "to inform housing . . . assignments with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive." *Id.* § 115.42(a). In using such risk screening information, the BOP "shall make *individualized* determinations about how to ensure the safety of each inmate." *Id.* § 115.42(b) (emphasis added). Specifically, "[i]n deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates . . . the agency shall consider on a *case-by-case basis* whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems." *Id.* § 115.42(c) (emphasis added). Moreover, "[a] transgender or intersex inmate's own views with respect to his or her own safety shall be given serious *consideration*." *Id.* § 115.42(e) (emphasis added).

As the PREA Regulations show, BOP personnel are not required to automatically assign transgender inmates to particular housing units based on their biological sex or identified gender. And even though some provisions of the PREA Regulations are "cast in mandatory language," *Gonzalez v. United States*, 814 F.3d 1022, 1030 (9th Cir. 2016) (citation and internal quotation marks omitted), "governmental action remains discretionary if all of the challenged decisions involved 'an element of judgment or choice,'" *Compart's Boar Store, Inc. v. United States*, 829 F.3d 600, 605 (8th Cir. 2016) (citation omitted).

Powell nonetheless argues that the discretionary function exception does not bar her negligent housing assignment claim. *See* Mem. of Law in Opp'n to Def.'s

13

Mot. to Dismiss the Fourth Am. Compl. ("Pl.'s Opp'n") at 7, ECF No. 73. Her opposition is based on a purported lack of evidence that "prison officials followed the mandates of the Transgender Offender Manual." *Id.* at 8. In this vein, Powell contends that the United States has not "demonstrate[d] that [prison officials'] decision [regarding her housing assignment] was 'objectively reasonable' and was not arbitrary, and was not in contravention of their own rules[.]" *Id.*

Powell's argument is unavailing for two reasons. First, even if MDC's decision to place Powell in a male general population unit was "unreasonable," "arbitrary," or against their own rules, the quality of that decision does not defeat application of the discretionary function exception. *See* 28 U.S.C. § 2680(a) (declining waiver of sovereign immunity over discretionary acts "whether or not the discretion involved be abused"); *see also Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1985) ("If it is determined that the actions of the Bureau of Prisons involved discretion, the discretionary function exception will serve to protect the government from suit, even if the Bureau of Prisons abused its discretion or was negligent in the performance of its discretionary functions."). Second, Powell all but concedes that her housing assignment was a discretionary act: "[T]he decisionmaking as to transgender assignment had to be determined on a *case-by-case basis*." Pl.'s Opp'n at 9–10 (emphasis added).

14

### B. The Public Policy Prong

Second, a court must evaluate whether a judgment or choice is "grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (quoting *Gaubert*, 499 U.S. at 322–23). "If 'established governmental policy, as expressed or implied by statute, regulation or agency guidelines, allows a Government agent to exercise discretion' such that the first prong of the test is satisfied, 'it must be presumed [with respect to the second prong,] that the agent's acts are grounded in policy when exercising that discretion.'" *Hartman v. Holder*, No. 1:00-cv-6107, 2009 WL 792185, at *6 (E.D.N.Y. Mar. 23, 2009) (alteration in original) (quoting *Gaubert*, 499 U.S. at 324).

With regard to prisons, courts have "note[d] that BOP decisions regarding prison management and maintenance typically are subject to numerous policy considerations." *Barone*, 2015 WL 10791889, at *18. Key policy considerations in which "[p]rison administrators . . . should be accorded wide-ranging deference" include the "preserv[ation] [of] internal order and discipline and [the] maint[enance] [of] institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). These policy considerations extend to "*how to house* and whether to monitor particular inmates" because these decisions implicate considerations of "inmate safety, general prison security, . . . and the effective use of limited resources." *Ortiz v. United States*, No. 01 Civ. 4665, 2002 WL 1492115, at *4 (S.D.N.Y. July 11, 2002) (emphasis added).

Accordingly, BOP officials must balance "institutional needs and objectives" with inmates' preferences. *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974).

Here, MDC's decision regarding Powell's housing assignment was at a minimum susceptible to policy analysis and likely grounded in public policy considerations. MDC's decision is governed by the PREA Regulations, pursuant to which it conducts a "risk screening" process "to inform housing . . . assignments with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive." 28 C.F.R. § 115.42(a). Prison officials thus use this information to "make individualized determinations about how to ensure the safety of each inmate." *Id.* § 115.42(b). However, the goal of keeping transgender inmates safe is balanced against considerations of prison "management [and] security problems." *Id.* § 115.42(c).

Thus, Powell's negligent housing assignment claim is dismissed as barred by the FTCA's discretionary function exception. Moreover, because this claim is also barred by the FTCA's statute of limitations, it is unnecessary to address the argument for dismissal under the FTCA's private analogue requirement.

### III. Powell's Constitutional Tort Claims Under the FTCA and 42 U.S.C. § 1983 Must Be Dismissed as Abandoned.

Powell concedes the U.S. Attorney "is correct" that her claim that the United States' negligence violated her rights under the U.S. Constitution and the New York State Constitution is not cognizable under either the FTCA or § 1983. Pl.'s Opp'n at

16

16. "It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims." *Ross v. Port Chester Hous. Auth.*, No. 17-CV-4770, 2019 WL 4738941, at *7 (S.D.N.Y. Sept. 27, 2019) (collecting cases).

## CONCLUSION

The United States' motion to dismiss is granted as to Powell's negligent housing assignment and constitutional tort claims. The motion is denied as to Powell's claim for the negligent inspection of her cell.

**SO ORDERED.**

Brooklyn, New York
August 20, 2024

*Edward R. Korman*
Edward R. Korman
United States District Judge